UNITED STATES DISTRICT COURT
FOR THE FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| TRUSTMARK INSURANCE COMPANY, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 09-cv-6169 |
| CLARENDON NATIONAL INSURANCE | ) | |
| COMPANY and CLARENDON AMERICA | ) | Hon. Harry D. Leinenweber |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants-Petitioners. | ) | |
| | ) | |
| | ) | |
| | ) | |

**BRIEF IN SUPPORT OF MOTION TO DISMISS TRUSTMARK'S COMPLAINT**

Defendants Clarendon National Insurance Company and Clarendon America

Insurance Company ("Clarendon") move to dismiss the complaint of Plaintiff Trustmark

Insurance Company ("Trustmark") under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This lawsuit should never have been filed. It is a meritless procedural tactic in a

multi-faceted reinsurance dispute that has been the subject of two separate arbitration

proceedings that have been pending since mid-2006. By law and contract this dispute belongs in

arbitration. Instead of proceeding in that venue, Trustmark comes to court in a baseless attempt

to deprive Clarendon of its party-appointed arbitrator. Trustmark seeks to do this *three years*

after Clarendon selected that arbitrator, and does so based on the contrived claim that

Clarendon's party-appointed arbitrator will "inevitably" violate a confidentiality agreement

executed in connection with another arbitration proceeding between the same parties.

The Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ("the FAA"), does not permit federal courts to hear preemptive challenges to the qualifications of an arbitrator. And, even if federal courts could hear such challenges, Trustmark's allegations do not plausibly suggest that Clarendon's arbitrator is not "disinterested"; thus, it wholly fails to state a claim upon which relief can be granted. Trustmark's attempts to delay the arbitration and deny Clarendon its choice of arbitrator are unwarranted. Plaintiff's meritless complaint should be dismissed and the parties should proceed to arbitration.

## FACTS

The following facts, which are taken solely from Trustmark's complaint and the exhibits attached thereto, are presumed to be correct for the purposes of this motion to dismiss.[1]

The underlying dispute arises from various reinsurance relationships between the parties. Specifically, Clarendon purportedly reinsured Trustmark under a quota share reinsurance treaty effective June 1, 1998 known as the Variable Quota Share Treaty or "VQS." (Compl. ¶ 8.) This treaty was the purported renewal of a preceding Variable Quota Share treaty allegedly effective June 1, 1997. (Compl. ¶ 8.) To distinguish between these two quota share treaties, they are referred to herein as the VQS I and VQS II, or the 1997 VQS Treaty and the 1998 VQS Treaty, respectively. Further, Clarendon reinsured Trustmark under certain excess-of-loss agreements referred to as the "1998 XOL Treaties." (Compl. ¶¶ 9, 14.) Trustmark alleged it had the right to cede some of the same business and losses to both the 1998 VQS Treaty and the 1998 XOL Treaties. (Compl. ¶ 10; Ex. 3 to Compl. at 1.)

---

[1] Trustmark's complaint refers to several documents that are attached as exhibits to the complaint. When a complaint refers to documents attached to the complaint, the court can consider those documents on a motion to dismiss without turning it into a summary judgment motion. *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

The 1998 VQS Treaty is memorialized in what is known in reinsurance terminology as a "placement slip." (Compl. ¶ 8; Ex. 2 to Compl.) The 1998 VQS placement slip contains a provision for an "Arbitration Clause." (Ex. 2 at p. 3.) Placement slips, while binding contracts, are usually supplemented with a more fully worded contract, called a "wording" in reinsurance terminology. The 1998 VQS Treaty, however, was never reduced to a wording. (Compl. ¶ 8.)

Unlike the 1998 VQS Treaty, the 1997 VQS Treaty was reduced to a wording that contained a complete arbitration clause. (Compl. ¶ 8.) Article XVI of the 1997 VQS Wording provided for arbitration of disputes, with the arbitration panel made up of two party-appointed arbitrators and one umpire. Specifically, Article XVI states:

> As a precedent to any right of action hereunder, if any differences shall arise between the contracting parties with reference to the interpretation of this Agreement or their rights with respect to any transaction involved, whether arising before or after termination of this Agreement, such differences shall be submitted to arbitration upon written request of one of the contracting parties.
>
> Each party shall appoint an arbitrator within thirty days of being requested to do so and the two named shall select a third arbitrator before entering upon arbitration…. If the two arbitrators fail to agree on a third arbitrator within thirty days of appointment, each of them shall name three individuals, of whom the other shall decline two, and the choice shall be made by drawing lots. All Arbitrators shall be active or retired disinterested officers of insurance or reinsurance companies or Underwriters at Lloyd's London not under the control of either party to this Agreement.

(Ex. 1 to Compl. at 7.)

Disputes arose between Clarendon and Trustmark under both the 1998 VQS Treaty and the 1998 XOL Treaties. (Compl. at ¶¶ 9-10.) Specifically, on May 23, 2006, Trustmark demanded, in writing, arbitration of the disputes relating to the 1998 XOL Treaties. (Compl. at ¶ 9; Ex 3 to Compl. at 1.) On July 7, 2006, Clarendon responded to Trustmark's

3

demand and counter-demanded, in writing, for arbitration of the disputes relating to both the

1998 VQS Treaty and the 1998 XOL Treaties, and at that time, named the same individual, Mary

Ellen Burns, as its party-appointed arbitrator for both disputes.  (Compl. at ¶ 10; Ex. 3 to Compl.

at 1.)  Trustmark responded by naming its party-appointed arbitrator.  (Compl. ¶ 14.)  Trustmark

did not object to Clarendon appointing Ms. Burns as its party-appointed arbitrator for both the

VQS II and 1998 XOL Treaties.

By agreement of the parties, the 1998 VQS Arbitration was put on hold while the

parties proceeded with the arbitration of their disputes under the 1998 XOL Treaties.  (Compl. ¶¶

9, 14.)  Clarendon thought consolidating the two arbitrations would make sense, but Trustmark

resisted consolidation and the two arbitrations were kept separate.[2]  (Compl. ¶¶ 10-11.)  In

connection with the 1998 XOL Treaties arbitration, Trustmark and Clarendon executed a

confidentiality agreement that made confidential any "Arbitration Information," defined as

"briefs, depositions and hearing transcripts generated in the course of this arbitration, documents

created for the arbitration or produced in the proceedings by the opposing party or third-parties,

final award and any interim decisions, correspondence, oral discussions and information

exchanged in connection with the proceedings…." (the "Confidentiality Agreement").  (Ex. 4 to

Compl. at ¶ 2.)  Such Arbitration Information could be disclosed, *inter alia*, "to the extent

necessary to obtain compliance with any interim decisions or the final award herein," or "in

connection with court proceedings relating to any aspect of the arbitration."  (*Id.* at ¶ 3.)

The 1998 XOL Treaties arbitration resulted in a final award dated March 20,

2009.  (Compl. ¶ 13.)  Clarendon prevailed on, and Trustmark lost, both major issues in dispute.

---

[2] Trustmark agreed that written discovery, including document production, would be consolidated.

Following the final award in Clarendon's favor, Clarendon turned back to the 1998 VQS Arbitration. The parties had already selected their party-appointed arbitrators in that proceeding; so in August, 2009, Clarendon began the umpire selection process as outlined in Article XVI of the 1997 VQS wording. (Compl. ¶ 14.) Instead of abiding by the process to select an umpire, Trustmark wrote Clarendon's party-appointed arbitrator and asked her to withdraw from the proceeding. (Compl. at ¶ 17.) Failing in that effort, Trustmark then filed this action seeking to have the court disqualify her. For the first time in the three years since Clarendon named Ms. Burns to serve as its party-appointed arbitrator in both arbitrations, Trustmark objects on the grounds that such an arbitrator is not "disinterested." Tellingly, the only thing that has changed during those three years is that Clarendon prevailed in the 1998 XOL Treaties arbitration. (Compl. ¶ 13.)

Trustmark's first claim alleges that Clarendon has breached the arbitration agreement in the 1998 VQS treaty because Clarendon named a party-appointed arbitrator that is not "disinterested" because "she has served as the Clarendon Parties' arbitrator in the 1998 XOL arbitration" and "she will inevitably disclose information subject to the Confidentiality Agreement." (Compl. ¶ 20.) Trustmark's second claim alleges a breach of the Confidentiality Agreement because – again – "Clarendon's arbitrator will inevitably disclose confidential information in the course of the VQS II arbitration." (Compl. ¶ 22.) These claims fail as a matter of law.

## ARGUMENT

1.  Trustmark's Claims Are Not Allowed by the FAA.

Under the FAA, federal courts do not have the authority to rule on pre-hearing challenges to the qualifications of an arbitrator. This Court has previously dismissed an identical pre-hearing challenge that an arbitrator was not "disinterested." *See Old Republic Ins. Co. v.*

*Meadows Indem. Co. Ltd.*, 870 F. Supp. 210 (N.D. Ill. 1994).  Old Republic Insurance Company brought an action to disqualify Meadows Indemnity Company's party-appointed arbitrator, arguing he was not "disinterested" because the arbitrator had been on the opposing side in two lawsuits several years before.  *Id.* at 210-11.  The court dismissed the action, reasoning that a federal court's "involvement in any dispute arising under the Federal Arbitration Act … is severely limited, since if it were otherwise, the ostensible purpose for resort to arbitration, which is the avoidance of litigation, would be frustrated."  *Id.* at 211 (quotations omitted).  Because the FAA does not provide for removal of an arbitrator, the court held that a party's sole remedy if it felt an arbitrator was not "disinterested" was to seek vacation of the award once it was granted.  *Id.* at 212.  Before the hearing, a request to remove an arbitrator "simply is not available."  *Id.*  In other words, *even if, as Trustmark alleges, Clarendon's arbitrator were not disinterested – a contention Clarendon strongly disputes*—Trustmark fails to state a claim upon which relief can be granted because this Court has no authority to remove the arbitrator or otherwise preclude her from serving as Clarendon's party-appointed arbitrator in the proceeding.

Indeed, the Fifth Circuit rejected a similar attempt to disqualify a party-appointed arbitrator based on allegations that the arbitrator did not satisfy the contractual qualifications, holding that federal courts lack the authority to hear such preemptive challenges to an arbitrator's qualifications.  *See Gulf Guar. Life Ins. Co. v. Connecticut Gen. Life Ins. Co.*, 304 F.3d 476 (5th Cir. 2002).  In *Gulf Guaranty*, Connecticut General sought to disqualify Gulf Guaranty's party-appointed arbitrator alleging that he was not an officer of a life insurance company, which was one of the arbitrator qualifications specified in the agreement.  *Id.* at 480 n.1, 489.  The district court had disqualified the arbitrator because he was not an officer of a life insurance company.  *Id.* at 489.

Reversing, the Fifth Circuit held that the Federal Arbitration Act does not give a court the power to "*remove* an arbitrator from service." *Id.* at 490 (emphasis in original). Even when, as here, a party alleges arbitrator bias – again, an allegation that Clarendon strongly disputes – the FAA only provides for vacatur of the award after it has been issued. *Id.* As the Fifth Circuit reasoned, the "purpose of the FAA is to 'move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible.'" *Id.* (quoting *Moses H. Cone Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1982)). Because the FAA's purpose is to facilitate arbitration, "a court may not entertain disputes over the qualifications of an arbitrator to serve merely because a party claims that enforcement of the contract by its terms is at issue." *Id.* at 491.[3] Thus, even though Trustmark frames its claims "as a request to enforce the arbitration agreement by its terms," this is not a challenge that this court is "authorized to adjudicate pursuant to the FAA prior to the issuance of an arbitral award." *Id.* at 490.

Other federal courts have come to the same result, holding that the FAA deprives them of the power to intervene in an ongoing arbitration to decide the qualifications of an arbitrator. The Second Circuit rejected a pre-hearing challenge to an arbitrator's independence, holding that the FAA "does not provide for pre-award removal of an arbitrator." *Aviall, Inc. v. Ryder Sys., Inc.*, 110 F.3d 892, 895 (2d Cir. 1997). And the Eighth Circuit has held that a party "cannot obtain judicial review of the arbitrators' decisions about the qualifications of the arbitrators or other matters prior the making of an award." *Cox v. Piper, Jaffray, & Hopwood, Inc.*, 848 F.2d 842, 843-44 (8th Cir. 1988) (per curiam); *see also Certain Underwriters at Lloyd's, London v. Argonaut Ins. Co.*, 264 F. Supp. 2d 926, 935 (N.D. Cal. 2003) (holding that

_____

[3] The court recognized an exception for claims that challenged the validity of the entire contract, such as fraud in the inducement. Trustmark makes no such claim regarding the 1998 VQS Treaty.

that there is "a strong basis in FAA policy" for a rule that "courts do not have the power under

the FAA to disqualify an arbitrator while proceedings are pending").

These authorities overwhelmingly require dismissal of Trustmark's claims that

attempt to interfere with Clarendon's ability to appoint an arbitrator of its choosing. *Jefferson-*

*Pilot Life Ins. Co. v. LeafRe Reinsurance Co.*, No. 00-C-5257, 2000 U.S. Dist. LEXIS 22645

(N.D. Ill. Nov. 20, 2000), an unpublished decision of this court that entertained a challenge to an

arbitrator's qualifications, is unavailing. As the Seventh Circuit has made clear, trial court

rulings like *Jefferson-Pilot* are not binding and have no *stare decisis* effect. *See Midlock v.*

*Apple Vacations West, Inc.*, 406 F.3d 453, 457-58 (7th Cir. 2005). And in *Gulf Guaranty*, the

Fifth Circuit explicitly rejected the *Jefferson-Pilot* ruling, holding that its ruling "conflict[s] with

the purpose of the FAA and its policy favoring arbitration of disputes prior to court

intervention." 304 F.3d at 491 n. 15. As *Gulf Guaranty* makes clear, Trustmark cannot use a

contrived breach of contract claim to avoid federal arbitration policy and the FAA's limitations

on removing an arbitrator in a pending arbitration. *See Gulf Guaranty*, 304 F.3d at 490-91.

2.      Trustmark's Allegations Fail to Establish That Clarendon's Arbitrator Is Not "Disinterested" and Fail to Establish a Breach of Either the Arbitration Agreement or the Confidentiality Agreement.

Even if this Court had authority under the FAA to adjudicate Trustmark's claim,

Trustmark's allegations fall far short of establishing that Clarendon's arbitrator is not

"disinterested" or that either the arbitration agreement or the Confidentiality Agreement have

been (or will be) breached. Trustmark has alleged only two factual grounds upon which it bases

its claims: (1) Clarendon's arbitrator "served as the Clarendon Parties' arbitrator in the 1998

XOL arbitration" and (2) "she will inevitably disclose information subject to the Confidentiality

Agreement." (Compl. ¶ 22.) These allegations fail to state a claim upon which relief can be

granted.

     *A.  Prior service as a party-appointed arbitrator does not render Clarendon's arbitrator "interested" or otherwise improperly partial or biased.*

"Disinterested" is generally defined as having a personal interest in a dispute's outcome. *See*, *e.g.*, Black's Law Dictionary (8th Ed. 2004) (defining "disinterested" as "[f]ree from bias, prejudice or partiality; not having a pecuniary interest"); 11 U.S.C. § 101(14) (defining "disinterested person" for bankruptcy code as not having a financial interest in the matter and not having a position with the debtor). For example, an arbitrator would not qualify as disinterested if she had a financial interest in the outcome of the case. Trustmark, however, has not alleged that Clarendon's arbitrator has a personal interest in the parties' dispute. Instead, Trustmark bases its entire claim on the erroneous contention that because Clarendon's arbitrator was also Clarendon's arbitrator in another case she will "inevitably" breach the Confidentiality Agreement. Trustmark pleads no facts plausibly suggesting a breach of the Confidentiality Agreement and speculation of misconduct cannot disqualify an arbitrator. *See Employers Ins. Co. of Wausau v. Certain Underwriters at Lloyds of London*, No. 09-cv-201-bbc, 2009 U.S. Dist. LEXIS 89945, *12-13 (W.D. Wis. Sept. 28, 2009) (rejecting attempt to disqualify arbitrator because party "only speculated about" alleged improper ex parte contacts).

     Nor is prior service as a party-appointed arbitrator grounds for disqualification. The Seventh Circuit has held that even prior representation of one of the parties as an attorney does not constitute "evident partiality"—lack of disinterest – on the part of an arbitrator. *See Sphere Drake Ins. Ltd. v. All American Life Ins. Co.*, 307 F.3d 617, 621-22 (7th Cir. 2002). *Sphere Drake*'s reasoning requires dismissal of Trustmark's disqualification claim. That case, like this one, was a reinsurance dispute involving an arbitration before a tri-partite panel in which each side appointed one arbitrator, who then selected a neutral umpire. *Id.* at 619. The court held that under the parties' agreement, the party-appointed arbitrators were "to be impartial

adjudicators," which is analogous to "disinterested." *See id.* at 620. All American Life attempted to overturn an arbitration award because Sphere Drake's party-appointed arbitrator had previously represented Sphere Drake as an attorney. *Id.* at 620-21. The Seventh Circuit reasoned that when assessing claims that an arbitrator had an improper interest or bias in an underlying arbitration, courts must draw a distinction between a "party-appointed arbitrator" serving on a tripartite panel – such as the arbitrator and panel at issue here – and a "neutral" arbitrator or umpire serving on the same panel. *Id.* In essence, "party-appointed arbitrators are *supposed* to be advocates" and "no one believes that the predictable loyalty of these designees spoils the award" issued by a tripartite panel. *Id.* (emphasis in original). Applying *Sphere Drake*'s reasoning here, the fact that Clarendon's party-appointed arbitrator served in that same capacity in the 1998 XOL Treaties arbitration does not, as a matter of law, preclude her from serving in that capacity in the 1998 VQS Treaty arbitration.

As the Seventh Circuit further ruled, the standards for impartiality under the FAA are less stringent than the recusal standards for federal judges; thus if a federal judge could have heard the case under the circumstances, the party-appointed arbitrator could as well. *Id.* at 621. A federal judge is not prohibited from sitting on a case merely because he presided over a prior case involving the same parties. *See United States v. Bond*, 847 F.2d 1233, 1241 (7th Cir. 1988) (holding that a "judge need not recuse himself because of knowledge of a party gained in a judicial capacity"). Similarly, Clarendon's arbitrator's earlier service does not defeat her ability to serve on the 1998 VQS arbitration panel. Furthermore, Trustmark's unhappiness with the 1998 XOL Panel's ruling is not grounds for disqualification. *See Liteky v. United States*, 510 U.S. 540, 555 (1994) ("rulings alone almost never constitute a valid basis for a bias or partiality motion").

10

In fact, the Sixth Circuit has expressly held that prior service as a party-appointed arbitrator does not constitute evident partiality. In *Nationwide Ins. Co. v. Home Ins. Co.*, that court held that a party-appointed arbitrator who previously had served as a party-appointed arbitrator six times for that party was not evidently partial. 429 F.3d 640, 647-49 (6th Cir. 2005). Therefore, Trustmark's allegations that Clarendon's arbitrator has once previously served as Clarendon's party-appointed arbitrator cannot meet the "disinterested" standard. It follows inextricably from *Nationwide*'s holding that this Court should reject Trustmark's attempt to impose a rule that would forbid any arbitrator from serving more than once as a party-appointed arbitrator.

Furthermore, the Western District of Wisconsin recently rejected a claim – like Trustmark's here – that speculation about what a party-appointed arbitrator might do is grounds do disqualify her as not "impartial and disinterested." *See Employers Ins.*, 2009 U.S. Dist. LEXIS 89945, *11-13. In *Employers*, the party argued that the arbitrator was not disinterested because he had allegedly engaged in ex parte communications and was beholden to the other party's parent company due to his connection with a reinsurance arbitration association known as ARIAS. *Id.* at *12. Recognizing that "it is rare for a court to disqualify an arbitrator while an arbitration is still pending," *id.* at 13, the court refused to disqualify the arbitrator, in part, because the party had only offered speculation that ex parte contacts had occurred and because the alleged partiality was based on connections that were "too attenuated to create actual or apparent impartiality." *Id.* at 12.

The same holds true here. Trustmark has offered only unfounded speculation that Clarendon's arbitrator will breach a confidentiality agreement at some point in the future.

11

Neither that speculation nor Trustmark's meritless argument that a party-appointed arbitrator cannot serve more than once can save its claim from dismissal.

> B. *Trustmark has not alleged and cannot allege that Clarendon's arbitrator has breached the Confidentiality Agreement.*

Recognizing that federal courts do not have the authority to remove a party-appointed arbitrator before an arbitration hearing, and further recognizing the inherent weakness in its claim that Clarendon's arbitrator should be removed solely because she has served previously, Trustmark asserts a truly novel – but equally baseless – theory for relief: It is *inevitable* that Clarendon's party-appointed arbitrator will breach the Confidentiality Agreement from the 1998 XOL Treaty arbitration and therefore she must be removed from the 1998 VQS Treaty arbitration before she commits the deed and inflicts "irreparable harm" upon Trustmark.

No authority of which Clarendon is aware supports this claim. Trustmark has not alleged – nor could it allege – that Clarendon's arbitrator has done anything from which one could plausibly conclude that she will violate the Confidentiality Agreement. Trustmark's failure to plead an existing breach of the Confidentiality Agreement is a fatal defect that cannot be cured. *See Clamage v. Dalen*, 957 F. Supp. 1037, 1039 (N.D. Ill. 1997).

Nor can Trustmark's allegations properly be construed as a claim for anticipatory breach of contract under the common law doctrine of anticipatory repudiation, which is the sole exception to the rule that a party can only sue for a breach of contract that has actually occurred. "[A]nticipatory repudiation is actionable as a breach of contract when – and only when – the repudiating party unequivocally and without justification renounces its duty to perform the contract on its date of performance." *Draper v. Frontier Ins. Co.*, 638 N.E.2d 1176, 1181 (Ill. Ct. App. 1994). Put another way, an anticipatory repudiation must be a "a clear manifestation of an intent not to perform the contract on the date of performance." *In re Marriage of Olsen*, 528

N.E.2d 684, 686 (Ill. 1988). Merely "[d]oubtful and indefinite statements that performance may or may not take place are not enough to constitute an anticipatory repudiation." *Id.* Trustmark has not pleaded any such repudiation, nor could it – neither Clarendon nor its party-appointed arbitrator have stated any intention to breach the Confidentiality Agreement.

What is more, in order to state a viable claim for anticipatory breach of contract, Trustmark must allege that Clarendon has taken an action "which defeats or renders unattainable the object of the contract." *Id.* At best, Trustmark alleges that Clarendon intends to make the award in the 1998 XOL Treaties arbitration an "issue" in the 1998 VQS Treaty arbitration, and as a result, Clarendon's arbitrator will inevitably reveal confidential information from the former arbitration in the latter arbitration. (Compl. ¶¶ 20, 22.) Such allegations are legally insufficient.

First, the extent to which the award in the 1998 XOL Treaties arbitration will become an "issue" in the 1998 VQS Treaty arbitration – if at all – is utterly speculative. In part, it is dependent upon the arguments Trustmark and Clarendon assert in the 1998 VQS Treaty arbitration, all of which are now completely unknown because the parties have not even convened a full panel as yet and have not submitted anything setting forth their respective claims and arguments.

Second, whether or not the award in the 1998 XOL Treaties arbitration becomes an "issue" in the 1998 VQS Treaty arbitration is for the arbitration panel in that arbitration to decide. Trustmark's attempt to have this Court limit the panel's authority to decide what relevance and impact – if any – the award in the 1998 XOL Treaties arbitration should have in the 1998 VQS Treaty arbitration is improper. *C.f. Zurich American Ins. Co. v. Watts. Indus., Inc.*, 466 F.3d 577, 581 (7th Cir. 2006) (holding that preclusive effect of a judgment in an arbitration is to be determined by the arbitrators).

13

Third, even if the arbitration panel in the 1998 VQS Treaty arbitration ultimately addresses and concludes that the award in the 1998 XOL Treaties arbitration is a relevant and proper issue for consideration, that does entail a violation of the Confidentiality Agreement. For example, given that the 1998 XOL Treaties arbitration and the 1998 VQS Treaty arbitration involve the same parties (and/or their privies) and that Trustmark purported to cede some of the same business and losses under both sets of treaties, one potential purpose for which the panel might review and consider the award in the 1998 XOL Treaties arbitration is to ensure that any award issued in the 1998 VQS Treaty arbitration is consistent with the earlier award. Doing so would not trigger a violation of the Confidentiality Agreement, because that agreement allows Arbitration Information to be disclosed in order "to obtain compliance with any interim decisions or the final award herein." (Ex. 4 to Compl. at ¶ 3.) This Court cannot now decide for what reasons or purposes the arbitration panel might consider the 1998 XOL arbitration award and then rule that the consideration would necessarily trigger a violation of the Confidentiality Agreement – doing so would plunge the Court into impermissibly adjudicating a claim based on speculative and implausible considerations. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

## CONCLUSION

Trustmark's claims should be dismissed as an attempt to frustrate and delay the arbitration process, contrary to Congress's intent in the FAA. Congress has not authorized district courts to interfere in ongoing arbitrations by removing sitting arbitrators. And, even if this Court had the power to entertain Trustmark's claims, those claims fail as a matter of law because they cannot show Clarendon's arbitrator is not "disinterested" and are based on speculation about future breaches of contract. The complaint should therefore be dismissed.

15

Respectfully submitted,

Dated:  October 26, 2009

Attorneys for Clarendon America Insurance
Company

\_\_s/ G. Michael Halfenger_____

Of Counsel:                                                    G. Michael Halfenger
Brett H. Ludwig                                              Foley & Lardner LLP
Brian P. Keenan                                            777 E. Wisconsin Ave.
Foley & Lardner LLP                                   Milwaukee, WI 53202
777 E. Wisconsin Ave.                                (414) 297-5547 (direct)
Milwaukee, WI 53202                                (414) 297-4900 (fax)

15

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2009, I electronically filed Clarendon's Brief

in Support of Motion to Dismiss Trustmark's Complaint with the Clerk of the Court using the

ECF system which will send notification of such filings to the following:

Everett Joseph Cygal
  ecygal@schiffhardin.com
Amy M. Rubenstein
  arubenstein@schiffhardin.com
David M. Spector
  dspector@schiffhardin.com
SCHIFF HARDIN LLP
6600 Sears Tower
Chicago, IL  60606

Attorneys for Clarendon National Insurance
Company and Clarendon America Insurance
Company

__s/ G. Michael Halfenger_____
G. Michael Halfenger
Foley & Lardner LLP
777 E. Wisconsin Ave.
Milwaukee, WI 53202
(414) 297-5547 (direct)
(414) 297-4900 (fax)

16