# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| TRUSTMARK INSURANCE COMPANY, ) ) | |
| Plaintiff, ) ) | Hon. Harry D. Leinenweber |
| v. ) ) | No. 09 C 6169 |
| CLARENDON NATIONAL INSURANCE ) COMPANY and CLARENDON AMERICA ) INSURANCE COMPANY, ) ) | |
| Defendant. ) ) | |

## REPLY IN SUPPORT OF
## TRUSTMARK INSURANCE COMPANY'S
## MOTION FOR A PRELIMINARY INJUNCTION

TRUSTMARK INSURANCE COMPANY
By Its Attorneys
David M. Spector
Everett J. Cygal
Amy M. Rubenstein
SCHIFF HARDIN LLP
233 S. Wacker Drive, Suite 6600
Chicago, IL 60606-6473
Tel:   (312) 258-5500

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ........................................................................................................... 1

II. UNCONTESTED FACTS SUPPORTING INJUNCTIVE RELIEF ............................... 1

III. ARGUMENT .................................................................................................................... 5

    A. Trustmark Is Likely to Prevail on the Merits of Both Claims ............................... 5

        1. Clarendon Will Inevitably Disclose Confidential Panel Deliberations ..................................................................................... 5

        2. Clarendon's Arbitrator Is Not Disinterested .............................................. 7

    B. Trustmark Will Be Irreparably Harmed in the Absence of an Injunction and Has No Adequate Remedy at Law ................................................................ 11

        1. Trustmark Will Be Irreparably Harmed by Clarendon's Breach of the Confidentiality Agreement.................................................................. 11

        2. Trustmark Will Suffer Irreparable Harm if Clarendon's Arbitrator Participates in the VQS II Arbitration ...................................................... 13

    C. Clarendon Will Not be Significantly Harmed by a Preliminary Injunction ........ 13

    D. A Preliminary Injunction Is in the Public Interest ............................................... 14

IV. CONCLUSION ............................................................................................................... 15

**I.     INTRODUCTION**

Clarendon admits that in the VQS II Arbitration it will dispute the meaning and effect of the Final Award issued by the International II Panel, which became a federal court judgment upon confirmation by Judge Coar.  Clarendon boldly states that it will seek to limit that judgment's preclusive effect by arguing that certain issues it raised during the International II arbitration were *not* actually decided by the International II Panel.

Clarendon's admission that it intends to impeach the judgment and the International II Final Award through the use of the *same* partisan party-appointed arbitrator (Mary Ellen Burns) is an extraordinary revelation.  Ms. Burns will certainly breach the confidentiality of the International II Panel deliberations when she is called upon to interpret the Final Award or what the International II Panel decided in confidential deliberations.  Such disclosures are prohibited by:  (1) the separate Confidentiality Agreement signed by the parties and Panel; and (2) the parties' agreement to arbitrate, which mandates disinterested arbitrators.

**II.    UNCONTESTED FACTS SUPPORTING INJUNCTIVE RELIEF**

Clarendon reinsures Trustmark on multiple reinsurance contracts.  (Exs. 2, 5-6; Exs. A-C).[1]  Clarendon is the "lead" reinsurer on the International II Treaties and a participating reinsurer on the VQS II Treaty.[2]  (Id.).  After Clarendon purported to rescind *ab initio* the International II Treaties, Trustmark demanded arbitration.  (Ex. 3).  Consistent with industry custom and practice, Trustmark, Clarendon and the International II Panel all agreed, by

---

[1] Trustmark's citations to Exhibits numbered 1-24 are contained in the Appendix of Exhibits filed with its Motion for Preliminary Injunction.  Additional exhibits will begin at Exhibit 25.  References to Exhibits with letters are contained in Clarendon's Appendix of Exhibits.

[2] The concept of a "lead" underwriter or reinsurer has its origins in Lloyd's of London where a single underwriter would underwrite the risk and agree to contract terms and others, known as the "following market," would rely on the rating performed by the lead.  (Ex. 25).  Clarendon's underwriter, Paul Murray, was the lead underwriter on the International II.

executing a standard industry Confidentiality Agreement, to keep the International II matter confidential.[3] (Exs. 1, 11-13; Ex. I).

As Clarendon proudly declaims, the International II Panel accepted some (but not all) of Clarendon's arguments.[4] (Ex. 4, ¶ 1.c.; Clarendon Br., pgs. 6-7). The Panel accepted Clarendon's position that all other applicable reinsurance contracts (*i.e.* the VQS II) responded to losses *before* the International II Treaties. (Id.). Clarendon's counsel summarized its position in opening statements before the International II Panel:

> These treaties contain a net retained lines clause, and it's a very clear clause, it's very clearly worded, and what it says is if you're going to cede it to multiple pieces of reinsurance, multiple programs, this one has to go last. It's very simple, Trustmark's violating that.
>
> And, then, finally, there's the issue of common account, which is, I think, the other side of the coin on the net retained lines clause.[5]

(Ex. 28, pgs. 124:4-15).

In its Final Award, the Panel held: "for all claims on risks ceded by Trustmark to the International II Treaties, Trustmark must first make deductions for claims upon other

---

[3] Clarendon raises the red herring argument that the parties agreed to use information from one arbitration to the next. While the parties agreed that documents and depositions from the International II Arbitration could be used in the VQS II Arbitration, the parties never agreed that the International II Panel's confidential deliberations could be disclosed by Ms. Burns. (Trustmark Mem., pg. 9-10). Even Clarendon concedes only discovery—not deliberations—from the International II Arbitration may be used in the VQS II Arbitration. (Clarendon Br., pg. 6).

[4] Among other things, Clarendon's claims of rescission, bad faith underwriting and bad faith claims handling were rejected by the Panel. As a result of the arbitration, the Panel ordered Clarendon to pay Trustmark $6,645,648 plus 9% interest. Clarendon still has not paid that judgment. (Ex. 4, ¶ 4).

[5] Clarendon referred to this argument by many names throughout the proceeding. (*See* Clarendon Br., pgs. 4 & 6-7; Trustmark Mem., pgs. 5-8; Clarendon Prehearing Brief, pg. 44-50, attached as Ex. 26; and Summary of Hearing Testimony Regarding Clarendon's Order of Cessions Argument, attached as Ex. 27).

reinsurances [the VQS II]" and "[a]ll other requests for relief under the International II Treaties are denied." (Ex. 4, ¶¶ 1.c. & 6). Having won the point before the Panel, Clarendon now decides that it is no longer in its financial interest to have losses ceded to the International II last, so Clarendon adopts its conflicting position in the VQS II arbitration: "The Panel declined to rule on Clarendon's challenge to Trustmark's assertion that the [International II] Treaties provided 'common account' coverage to the VQS." (Clarendon Br., pg.7).

But well-settled Seventh Circuit precedent bars Clarendon from impeaching Judge Coar's judgment confirming the Final Award on the grounds that the Panel did not decide the "common account" issue. In fact, when Clarendon argued that the Panel had not decided another issue ("setoffs"), Judge Coar responded:

> Moreover, while the Panel considered the issue of Trustmark's potentially offsetting debts, it opted not to recognize or enforce any setoffs when rendering its final award. Indeed, the Panel makes no mention of setoffs in the Award at all, which works against Clarendon. *See Automobile Mechanics Local 701, Intern. Ass'n of Machinists & Aerospace Workers, AFL-CIO v. Joe Mitchell Buick, Inc.,* 930 F.2d 576, 578 (7th Cir.1991) (failure of arbitrator to discuss mitigation in award opinion showed that arbitrator did not intend to reduce award for employees' alleged failure to mitigate, where employer expressly raised mitigation before arbitrator).

*Trustmark Ins. Co. v. Clarendon Nat'l Ins. Co. & Clarendon Am. Ins. Co.*, No. 09-C-1673, 2009 WL 4043110, at *3 (N.D. Ill. Nov. 20, 2009). The Seventh Circuit's decision in *Automobile Mechanics* held that an arbitrator's "silence on such issues means that no such offsets are to be made." *Automobile Mechanics*, 930 F.2d 576, 578 (citations omitted). Clarendon's purported right to reargue the common account issue, fares no better than the "setoff" issue that Judge Coar found had been unsuccessfully raised in the International II Arbitration because it had been presented and the Panel denied all other requests for relief.[6] (Ex. 4, ¶ 6).

---

[6] Illinois law likewise holds that: "Arbitrators are presumed to have considered and fully determined all matters submitted to them. Arbitration is in the nature of a judicial inquiry with

Clarendon's brief makes clear that the facts will not stand in the way of its zeal to retain Ms. Burns as its interested arbitrator. To that end, Clarendon wrongly accuses Trustmark of an offense similar to its own because Trustmark's party-appointed arbitrator served on both the Syndicate 53 and International II Panels.[7] But Trustmark's Arbitrator disclosed his participation in another Trustmark matter, Clarendon had the opportunity to question him, and Clarendon explicitly waived any right to object when it "stipulate[d] that the [P]anel is properly constituted and ... any objections are waived." (Ex. 29, pgs. 6:17-10:10, 16:2-9). Despite its waiver, Clarendon later recognized a missed opportunity and sought to unring its bell on the first day of the arbitration hearing:

> [Clarendon's counsel]: Which then raises another issue, that if that ruling comes in, there's been all kinds of evidence and arguments that have been made in connection with that proceeding, that *of course [Trustmark's party-appointed arbitrator] has knowledge of and access to, but the other two panel members don't* and I don't, specifically opposing counsel does*, and that seems to me to open a Pandora's box of potential problems*. But let's see how --
>
> THE UMPIRE: Before you look at that box, *you want to review pages 6 through 12 of the opening transcript, and to what both sides waived* with regard to prior panel members' participation. I suggest you look at that first before we get into this issue regarding other hearings. Okay.

(Ex. 28, pgs. 21:3-21 (emphasis added).

While Trustmark's Arbitrator's service on the Syndicate 53 Panel is both materially different than Ms. Burns' situation and irrelevant, it demonstrates how a party may waive

---

its object to achieve a final and binding disposition of differences between parties, both present and prospective, with the force of an adjudication precluding the parties from relitigating the same subject. If the award is binding on the parties, any inquiry into the matters originally controverted is forever closed." *Bankers Leasing Ass'n, Inc. v. Pranno*, 681 N.E.2d 28, 33 (Ill. App. Ct. 1997) (internal quotation marks and citations omitted).

[7] This argument fails because, unlike the situation here, the International II Panel was not asked to interpret or apply the Syndicate 53 Award. Indeed, the International II Panel did not even consider the Syndicate 53 Award. (Ex. 28, pgs. 215:14-216:8).

-4-

arbitrator appointment issues in a reinsurance arbitration (*e.g.*, disclosure and accepting the panel). Although none of that has happened in the VQS II Arbitration (indeed, the parties have not even selected a prospective umpire), Clarendon asserts that Trustmark has waited too long to object to Ms. Burns. (Clarendon Br., pg. 20). Not so. Trustmark's objection to Ms. Burns is ripe for this Court's review.

### III. ARGUMENT

#### A. Trustmark Is Likely to Prevail on the Merits of Both Claims

##### 1. Clarendon Will Inevitably Disclose Confidential Panel Deliberations

The International II Confidentiality Agreement "remain[s] in effect even after conclusion of the arbitration proceedings." (Ex. 1, § 2; Exs. 11-13). Clarendon's only response is a hollow, unsupported promise: "Clarendon has not and does not intend to breach any such obligations, either directly or through its party-appointed arbitrator." (Clarendon Br., pg. 2) The self-serving denial of a future intent not to breach confidentiality, of course, is neither controlling nor credible. *See, e.g., Pepsico, Inc. v. Redmond*, 54 F.3d 1262, 1268-71 (7th Cir. 1995) (despite former employee's assurances to maintain confidentiality, disclosure of confidential information was inevitable if he simply did his job); *Global Telesystems, Inc. v. KPNQwest, N.V.*, 151 F. Supp. 2d 478, 482 (S.D.N.Y 2001) (enjoining officer from moving to competitor where confidentiality agreement provided for an injunctive relief because "[d]espite protestations by defendant ... it is unclear ... how disclosures, even inadvertent, can be prevented.").

Clarendon's credibility is fatally compromised, however, when it promises to vigorously contest before the VQS II Panel what was and what was not decided by the International II Panel

in which Ms. Burns participated.[8] As Judge Zagel observed when Hancock and Hancock's party-appointed arbitrator tried to do the same thing, such conduct renders the arbitrator "interested in the outcome of the arbitration." *Trustmark Ins. Co. v. John Hancock Life Ins. Co.*, No. 09 C 3959 (Sept. 30, 2009 and Oct. 15, 2009) (Zagel, J.). Judge Zagel also held that a breach of the confidentiality agreement renders the breaching arbitrator a "fact witness not subject to examination." *Id.*

But Clarendon's admission that it will take an inconsistent position during the VQS II Arbitration is not the only proof of Clarendon's contempt for the Confidentiality Agreement — Clarendon's Arbitrator has already admitted as much on the record. When asked if she would comply with the International II Confidentiality Agreement, Ms. Burns refused to answer, stating: "I think it's totally inappropriate to be having this conversation." (Ex. 30, pgs. 80:24-81:10).

Finally, Clarendon has defiantly declared that the Confidentiality Agreement does not bind its party-appointed arbitrator. When Trustmark recently requested that the International II Panel sign a copy of the Confidentiality Agreement executed by the parties, Clarendon made the audacious claim that its Arbitrator was not a party to, and is not bound by, the Confidentiality Agreement even though Ms. Burns had signed it:[9]

> In any event, the ***Panel Members are not parties to the Confidentiality Agreement***, which is specifically limited to Trustmark and Clarendon. The Panel Member's signatures on the Confidentiality Agreement function as a judge's

---

[8] For example, during arguments over its failed attempt to consolidate the International II Arbitration with the VQS II Arbitration, Clarendon conceded that the VQS II Panel will have to apply and interpret the International II Arbitration Final Award. (Clarendon Br., pgs. 7, 10-11).

[9] Clarendon impugns Trustmark for not giving Ms. Burns credit for signing the Confidentiality Agreement. But at the same time, Clarendon argues that her signature did not even make her a party to the Agreement. Worse yet for Clarendon, Ms. Burns' signature renders the fact pattern in this case nearly factually indistinguishable from *John Hancock*, No. 09 C 3959.

      signature on a protective order and by signing, ***the Panel members do not become parties to the agreement***.

(Ex. 23 (emphasis added)).

      This announcement removes any shred of doubt Clarendon and Ms. Burns have repudiated the Confidentiality Agreement. An anticipatory repudiation can be either "an explicit statement by the repudiating party that they cannot or will not perform under the terms of the contract," *or* "[a]n affirmative act [that] is inconsistent with the ability or willingness to perform." *Budd Co. v. Applied Composites Corp.*, No. 02 C 154, 2005 WL 2129102, at *2 (N.D. Ill. June 27, 2005). Here, both tests have been satisfied by Clarendon's comment that Ms. Burns is not even a party to the Confidentiality Agreement.[10]

### 2. Clarendon's Arbitrator Is Not Disinterested

      Another consequence of Clarendon's decision to choose as its party-appointed arbitrator on the VQS II Panel the same person who served in that capacity in International II is that Ms. Burns is "interested" and ineligible to serve. Clarendon makes two futile arguments to justify this mistake.

      First, relying only on a Black's Law Dictionary definition, Clarendon attempts to limit the disinterested standard to "financial interest" in the outcome of the case. (Clarendon Br., pg. 16). But a financial interest is not the only disqualifying conduct under the standard. A party-appointed arbitrator who interprets an arbitration award issued by another panel on which that arbitrator sat, is rendered "interested in the outcome of the [subsequent] arbitration, in violation of the parties' [arbitration agreement]." *John Hancock*, No. 09 C 3959, at 7 (N.D. Ill. Sept. 30, 2009). There can be little doubt that this is exactly what Ms. Burns is being paid to do. Indeed,

---

[10] Clarendon's repudiation of Ms. Burns' obligations under the Confidentiality Agreement does not absolve Ms. Burns of her obligations thereunder, nor of her ARIAS obligation to "keep confidential all matters relating to the arbitration proceedings and decision." (Ex. 24).

Clarendon admits in its brief its significant investment in Ms. Burns' knowledge, thus also admitting its clear intent to exploit that investment to breach the Confidentiality Agreement:

> [Clarendon] has now spent years working with her on the prior arbitration. Trustmark's unfounded attempt to deprive Clarendon of her service cannot justly be countenanced.

(Clarendon Br., pg. 22).

Second, citing *Aviall, Inc. v. Ryder System*, 110 F.3d 892 (2d Cir. 1997), and *Gulf Guaranty Life Ins. Co. v. Connecticut General Life Ins. Co.*, 304 F.3d 476 (5th Cir. 2002), Clarendon asserts that Trustmark's claims are premature, despite also arguing that Trustmark waived its objection to Ms. Burns. (Clarendon Br., pgs. 5, 9-13, 19-21). But the Second and Fifth Circuit decisions do not support any relief other than what is sought here by Trustmark.[11]

The *Aviall* court recognized the same type of challenge as present in cases like *Jefferson-Pilot Life Ins. Co. v. LeafRe Reins. Co.*, No. 00 C 5257, 2000 WL 1724661 (N.D. Ill. Nov. 20, 2000). *Aviall* involved a dispute over the allocation of certain assets and liabilities. *Aviall*, 110 F.3d at 893-94. Prior to the arbitration, Aviall sought to disqualify the contractually designated arbitrator on the grounds that he was "partial" to the respondent because of an ongoing business relationship. *Id.* at 893-95. The Second Circuit sustained the District Court's dismissal of the complaint as premature, but was careful to point out the limits of the prematurity doctrine:

---

[11] Clarendon's other authority is likewise flawed. *Certain Underwriters at Lloyd's, London v. Argonaut Ins. Co.*, 264 F.Supp.2d 926, 935 (N.D. Cal. 2003), describes precedent such as *Gulf*, *Aviall*, and *Cox v. Piper, Jaffray & Hopwood, Inc.*, 848 F.2d 842, 843-44 (8th Cir. 1988) (per curiam), as only excluding the power to disqualify an arbitrator from the FAA. Even if this were the case, there is still a contractual basis to reach the same result. Additionally, *Argonaut* addressed timing of a claim of bias, which is clearly not the issue here. *Argonaut*, 264 F.Supp.2d at 936-37. *Old Republic Ins. Co. v. Meadows Ins. Co. Ltd.*, 870 F.Supp. 210, 211 (N.D. Ill. 1994), did the same and is fully address by Trustmark in its Opposition to Clarendon's Motion to Dismiss, pgs 6-7. And none of *Argonaut*, *Old Republic*, or *Cox* speak to the Confidential Agreement, which does *not* contain an arbitration clause.

> Although Aviall points to cases in which an arbitrator was removed prior to arbitration on account of a relationship with one party to the dispute, . . . those cases simply manifest the FAA's directive that *an agreement to arbitrate shall not be enforced when it would be invalid under general contract principles*.

*Id.* at 895-96 (internal citations omitted) (emphasis added). Trustmark asks this Court to order that the VQS II Arbitration not proceed with Ms. Burns on the Panel because such proceedings "would be invalid under general contract principles." *Id*. at 896.

Clarendon fares no better with *Gulf*. The *Gulf* court expressly agreed with the approach of the Second Circuit in *Aviall*. *Gulf*, 304 F.3d at 491. Accordingly, *Gulf* supports Trustmark's position that its claim is proper and timely. Moreover, the *Gulf* court did not contest the analysis of either *Jefferson-Pilot* or *Int'l Ins. Co. v. Certain Underwriters at Lloyd's, London*, No. 88 C 9838, 1992 U.S. Dist. LEXIS 22851 (N.D. Ill. Sept. 8, 1992), but merely found that they "conflict" with FAA "policy favoring arbitration of disputes prior to court intervention." *Id.* at 491 n.15. That is, the court did not hold, nor could it have, that either the FAA or its policy bars Trustmark's claims. Rather, under the facts, the overriding principle at issue is that contracts are to be enforced according to their terms.[12]

Additionally, given Clarendon's breach, *WellPoint, Inc. v. John Hancock Life Ins. Co.*, 576 F.3d 643 (7th Cir. 2009), controls over *Gulf*. In the Seventh circuit, *WellPoint* indicates that a claim that "the panel was not selected in accordance with the arbitration agreement," *id.* at 645, must be brought at the earliest effective point in the proceedings. *WellPoint* places Trustmark on notice that if it adopts a "'wait and see' approach," it risks forfeiting the exact same FAA § 10

---

[12] *Gulf* and *Aviall* do not address Clarendon's and its Arbitrator's breach of the Confidentiality Agreement, which is not subject to arbitration. *See Duthie v. Matria Healthcare, Inc.*, 535 F.Supp.2d 909 (N.D. Ill. 2008), *aff'd*, 540 F.3d 533 (7th Cir. 2000) (holding an arbitration may be enjoined if the arbitration clause does not provide for arbitration of the specific dispute at issue).

challenge that Clarendon now characterizes Trustmark's Motion as propounding too early. The Seventh Circuit's warning is unambiguous:

> If the statute were read to permit an objecting party to take a "wait and see" approach, no one would ever have an incentive to use § 5. Instead, each party could hold back and await the outcome of the proceeding. If that outcome were to its liking, then it would defend the substitution; if that outcome were not to its liking, then it could attack the method either the court or the parties used to nominate the new arbitrator. ... We decline to read the FAA in a way that effectively deletes this part of § 5, nor will we interpret it as creating a "heads I win, tails you lose" system.

*Id.* at 647-48. Clarendon urges this Court to adopt the very "wait and see" approach prohibited by *WellPoint* because it believes it will be protected by the more stringent FAA § 10 standards. But Trustmark's assertion of these claims has been timely.

Prior to *WellPoint*, the Northern District had been in the lead on these issues involving pre-award contractual challenges to an arbitrator. *See, e.g., Jefferson-Pilot Life Ins. Co. v. LeafRe Reins. Co.*, No. 00 C 5257, 2000 WL 1724661 (N.D. Ill. Nov. 20, 2000); *Int'l Ins. Co. v. Certain Underwriters at Lloyd's, London*, No. 88 C 9838, 1992 U.S. Dist. LEXIS 22851 (N.D. Ill. Sept. 8, 1992); *see also Certain Underwriters at Lloyd's, London v. Continental Cas. Co.*, Nos. 97 C 3638, 97 C 3640, 97 C 3643, 1997 WL 461035, at *4 (N.D. Ill. Aug. 11, 1997); *Evanston Ins. Co. v. Kansa Gen. Int'l Ins. Co. Ltd.*, No. 94 CV 4957 (N.D. Ill. Oct. 17, 1994) (reprinted in Mealey's Litig. Rep. Reinsurance Vol. 5 #14). (*See* Trustmark Mem., pgs. 17-19).

The *Jefferson-Pilot* court was clear that seeking a determination whether a party is "entitled to a benefit explicitly conferred by a provision of an agreement negotiated in an arm's length transaction between two sophisticated parties" may be sought pre-award. *Jefferson-Pilot*, 2000 WL 1724661, at *2. *Jefferson-Pilot* specifically stated that such a case is entirely different and less burdensome than an arbitrator bias challenge. *Id.* Even Clarendon acknowledges that the *International Insurance* court "disqualified the arbitrator because his service necessarily

created a risk that he would rely on *evidence* not submitted to the panel," which is Trustmark's precise objection to Ms. Burns. (Clarendon Br., pg. 18 (citing *Int'l Ins.*, 1992 U.S. Dist. LEXIS 22851, *4-5)). Finally, post-*Wellpoint*, an injunction was issued in *John Hancock*, No. 09 C 3959 (N.D. Ill. Sept. 30, 2009 and Oct. 15, 2009). Clarendon's rejoinder to *John Hancock* is to hope that it is reversed on appeal, an apparent admission that *John Hancock* is fatal to its position here. (Clarendon Br., pg. 19).

### B. Trustmark Will Be Irreparably Harmed in the Absence of an Injunction and Has No Adequate Remedy at Law

An injunction should also issue because if the VQS II Arbitration proceeds before an improperly constituted panel or if Clarendon or Ms. Burns breaches the Confidentiality Agreement, then Trustmark will be irreparably harmed and will have no adequate remedy at law. *See Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999).

#### 1. Trustmark Will Be Irreparably Harmed by Clarendon's Breach of the Confidentiality Agreement

The parties all understood the irreparable harm resulting from a breach of the Confidentiality Agreement:

> The parties recognize that serious injury could result to any party and its business if another party breaches its obligations under this Agreement. Therefore, ***each party agrees that all parties will be entitled to seek a restraining order, injunction or other equitable relief if another party breaches its obligations under this Agreement***, in addition to any other remedies and damages that would be available at law or equity.

(Ex. 1, § 6 (emphasis added)). It is undisputed that the parties selected injunctive relief as an appropriate remedy, and it follows that the non-breaching party does not need to prove lack of an adequate remedy at law. When parties select injunctive relief as a proper remedy, their choice should be enforced. *See, e.g., Cortez Prods., Inc. v. Monterey Peninsula Artists, Inc.*, No. 03 C 4630, 2004 WL 609375, at *2 (N.D. Ill. Mar. 22, 2004) ("In the absence of ambiguous language,

-11-

the court should enforce the contract as written" (citation omitted)). And unless Clarendon is enjoined from breaching its contractual duties, Trustmark will suffer the irreparable injury contemplated and prohibited by the Confidentiality Agreement — Clarendon and its Arbitrator will use and disclose confidential information.

Trustmark also need not await Clarendon's inevitable breaches because "a suit for an injunction deals primarily, not with past violations, but with threatened future ones; and that an injunction may issue to prevent future wrong, although no right has yet been violated." *Swift & Co. v. United States*, 276 U.S. 311, 326 (1928). Indeed, the Seventh Circuit has held that the absence of proof of breach was, as a matter of law, an inadequate reason to deny a preliminary injunction: "Injunctions issue to curtail palpable risks of future injury; it is not essential to establish that the worst has come to pass." *Lakeview Tech., Inc. v. Robinson*, 446 F.3d 655, 657 (7th Cir. 2006); *see also Reid v. Ill. State Bd. of Educ.*, 289 F.3d 1009, 1020-21 (7th Cir. 2002) ("A party seeking to obtain a preliminary injunction must demonstrate … a future irreparable harm if the injunction is not granted."); *Am. Hosp. Supply Corp. v. Hosp. Prods. Ltd.*, 780 F.2d 589, 594 (7th Cir. 1985) (finding injunction to enforce terms of contract proper if claim satisfies preliminary injunction standard).

Courts grant injunctive relief as a prospective remedy to avoid irreparable harm in situations where, as here, a litigant sought to use confidential information from an earlier arbitration as evidence in a later arbitration proceeding. *ITT Educ. Servs.*, *Inc. v. Arce*, 533 F.3d 342, 347-48 (5th Cir. 2008) ("[Plaintiff] will suffer irreparable harm because there is no cure for the breach of the confidentiality agreement." (internal quotation and citation omitted)). Clarendon, like the litigant in *ITT*, agreed that the International II Arbitration material would be maintained in confidence and Trustmark need not wait for the breach to occur to obtain the relief

sought here. Clarendon's half-hearted attempt to distinguish *ITT* by urging that it "has *not* said that it intends to breach the confidentiality agreement" is a weak retort. (Clarendon, Br., pg. 20). This self-serving near-denial is no substitute for a preliminary injunction here.

### 2. Trustmark Will Suffer Irreparable Harm if Clarendon's Arbitrator Participates in the VQS II Arbitration

Trustmark also will be irreparably harmed if Clarendon's Arbitrator continues to be an arbitrator in the VQS II Arbitration despite the fact that she is no longer "disinterested" and is therefore ineligible to serve under the terms of the arbitration agreement. Injunctive relief is appropriate when an ineligible arbitrator purports to decide a dispute. *See Jefferson-Pilot*, 2000 WL 1724661, at *2-3 (allowing a claim to enjoin an arbitration to proceed because the potential arbitrators were not contractually eligible under the applicable arbitration clause); *John Hancock*, No. 09 C 3959 (N.D. Ill. Sept. 30, 2009 and Oct. 15, 2009). The harm resulting from an ineligible arbitrator is irreparable; Ms. Burns is ineligible here, and Trustmark would be irreparably harmed if she were to continue to serve.

### C. Clarendon Will Not be Significantly Harmed by a Preliminary Injunction

Clarendon asserts its contractual rights as a reason that the Court should not enter a preliminary injunction. (Clarendon Br., pg. 22). But this mischaracterizes Clarendon's supposed injury because Clarendon is incorrect that it "would have to sacrifice its contractual right to name a person of its choosing." (Id.). Rather, Clarendon must comply with its contractual obligation that any arbitrator be "disinterested." (Exs. 5 and 6). And Clarendon further limited its arbitrator selection rights when it willingly entered the Confidentiality Agreement.[13] (Ex. 1).

---

[13] Trustmark's rights were likewise limited, which is why Trustmark appointed a different arbitrator in the VQS II Arbitration than in the International II Arbitration.

Clarendon's breach of these limits is the root of the case and it should not be heard to complain if it loses the "right" to violate its voluntary agreements. Clarendon's assertion that it will be harmed by having to select a disinterested arbitrator because "[i]t has now spent years working with [Ms. Burns] on the prior arbitration" underscores that Ms. Burns does not meet the applicable contractual limits. (Clarendon Br., pg. 20). Moreover, if Clarendon and its Arbitrator live up to their statement that they "will abide by their confidentiality obligations," then Clarendon suffers no harm at all by having a disinterested arbitrator. (Id.).

Finally, any harm Clarendon concocts to avoid a preliminary injunction should be viewed with skepticism because Clarendon and Ms. Burns agreed in the Confidentiality Agreement that an injunction is an appropriate remedy for breach. (Ex. 1, § 6). Clarendon took a risk when it named the same arbitrator who would inevitably breach the Confidentiality Agreement that Trustmark would assert its right to the relief prescribed by that Agreement. And Trustmark has every right to obtain the injunctive relief contemplated by the parties, despite Clarendon's protestations.

### D.  A Preliminary Injunction Is in the Public Interest

Although commercial disputes do not necessarily implicate the "public interest" when a preliminary injunction is sought, to the extent that the interest of the public is implicated, there is a clear public interest in preventing Clarendon from making a mockery of the arbitration process by appointing the same arbitrator and purporting that she meets the arbitration agreement's requirement for a "disinterested" arbitrator. *See WFC Commodities Corp. v. Alston*, No. 00C 0044, 2000 WL 33534178, at *1 (N.D. Ill. Mar. 8, 2000) ("[T]here is no public interest in this commercial dispute between private parties.").

Notwithstanding Clarendon's position (*see* Clarendon Br., pgs. 22-23), the FAA is not intended to be used as a shield against claims seeking to prevent contractually deficient

arbitrations from advancing. "The central purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms." *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 458 (2003) (internal quotation marks and citations omitted). Moreover, the FAA's "policy 'to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible'" (Clarendon Br., pg. 22 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983))) is wholly frustrated when the arbitration agreement — and a non-arbitrable Confidentiality Agreement — are breached prior to the arbitration, necessitating court action to ensure that the contracts are enforced in accordance with their terms.

## IV.   CONCLUSION

**WHEREFORE**, for the reasons stated above and in its initial Memorandum of Law, Trustmark Insurance Company requests a preliminary injunction, to be made permanent after trial, enjoining Clarendon and its officers, agents, servants, employees, attorneys and other persons who are in active concert or participation with them, who receive notice of the order by personal service or otherwise, from:

   i.   breaching the Confidentiality Agreement entered by the parties and Ms. Burns;

   ii.  appointing Ms. Burns as an arbitrator in the VQS II Arbitration; and

   iii. participating in the VQS II Arbitration so long as Ms. Burns is purporting to participate as an arbitrator.

DATED: January 15, 2010                    TRUSTMARK INSURANCE COMPANY

/s  Everett J. Cygal
By:   One of Its Attorneys
David M. Spector
Everett J. Cygal
Amy M. Rubenstein
SCHIFF HARDIN LLP
233 S. Wacker Drive, Suite 6600
Chicago, IL 60606-6473
Tel:  (312) 258-5500

## **CERTIFICATE OF SERVICE**

      I, Everett J. Cygal, do certify that on the 15th of January, 2010, the foregoing Reply in Support of Trustmark Insurance Company's Motion for a Preliminary Injunction was filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

    G. Michael Halfenger
    Brian Patrick Keenan
    Foley & Lardner LLP
    777 East Wisconsin Ave
    Milwaukee, WI 53202-5306


                                                    /s   Everett J. Cygal
                                                            Everett J. Cygal

CH2\8267517