**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **TRUSTMARK INSURANCE COMPANY,** | |
| Plaintiff, | |
| | Case No. 09 C 6169 |
| v. | |
| **CLARENDON NATIONAL INSURANCE COMPANY** and **CLARENDON AMERICA INSURANCE COMPANY,** | Hon. Harry D. Leinenweber |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion to Dismiss Plaintiff's Complaint, Defendants' Petition to Appoint an Umpire and Compel Arbitration, and Plaintiff's Motion for a Preliminary Injunction. For the following reasons, Defendants' motions are granted, and Plaintiff's motion is denied.

### I. BACKGROUND

Plaintiff Trustmark Insurance Company (hereinafter, "Trustmark") and Defendants Clarendon National Insurance Company and Clarendon America Insurance Company (hereinafter, "Clarendon") engaged in a series of reinsurance contracts in 1997 and 1998. Clarendon reinsured Trustmark under a "Variable Quota Share Treaty" that was effective on June 1, 1997 (the "VQS I"). This original agreement was renewed the following year in a new contract effective on June 1, 1998 (the "VQS II"). Clarendon also reinsured

Trustmark under excess-of-loss agreements known as the "1998 XOL Treaties." VQS I and II were both abbreviated contracts known in the industry as "placement slips," which are normally followed up by a fully worded contract known as a "wording." While a wording was created for VQS I, no such wording exists for VQS II. However, both parties have agreed on the record that the arbitration clause in VQS I was also an agreed upon term in VQS II and is therefore binding on the present dispute. (Compl. ¶ 8; Defs.' Pet. ¶ 7.) The relevant portion of the arbitration clause states:

> Each party shall appoint an arbitrator within thirty days of being requested to do so and the two named shall select a third arbitrator before entering upon the arbitration. If either party refuses or neglects to appoint an arbitrator within the time specified, the other party may appoint the second arbitrator. If the two arbitrators fail to agree on a third arbitrator within thirty days of their appointment, each of them shall name three individuals, of whom the other shall decline two, and the choice shall be made by drawing lots. All arbitrators shall be active or retired disinterested officers of insurance or reinsurance companies or Underwriters at Lloyd's, London not under the control of either party to this Agreement.

(Compl. Ex. 1 at 7.)

VQS II and the 1998 XOL Treaties were the basis of a dispute between the parties that culminated in Trustmark demanding, in writing, arbitration for the 1998 XOL Treaties on May 23, 2006. Clarendon responded in writing on July 7 by demanding arbitration of both VQS II and the 1998 XOL Treaties and appointing "Mary Ellen Burns ("Ms. Burns") as its arbitrator for these disputes." (Compl.

Ex. 3 at 2.) Clarendon requested that the two agreements be considered in a single arbitration, but Trustmark opposed the idea, and the 1998 XOL Treaties arbitration panel denied the consolidation request. No arbitration panel was convened for the VQS II dispute at that time.

During the 1998 XOL Treaties arbitration, the Plaintiff, Defendants, and all three arbitrators executed the "Confidentiality Agreement." (Pl.'s Mot. for a Prelim. Injunc. Exs. 12-13; Defs.' Br. in Opp. to Pl.'s Mot. for a Prelim. Injunc. Ex. I.) The Confidentiality Agreement was based on a standard agreement by ARIAS-US, a reinsurance arbitration association. The agreement required that all "Arbitration Information," such as correspondence, oral discussions, and other information exchanged in the proceedings, be kept confidential even after the proceedings end. The 1998 XOL Treaties arbitration ended and the arbitration panel issued a Second Corrected Final Award on March 20, 2009.

Around August of 2009, Ms. Burns contacted Trustmark's arbitrator to select an umpire for the VQS II arbitration. Trustmark objected to Ms. Burns serving as Clarendon's appointed arbitrator for the VQS II dispute, citing concerns with her duties under the Confidentiality Agreement and whether she was "disinterested" as required by the arbitration clause. Trustmark then filed the instant action.

Plaintiff requests that this court disqualify Ms. Burns as arbitrator for the VQS II dispute, find Defendants in breach of the

Confidentiality Agreement for appointing Ms. Burns, require Defendants to return to arbitration, and enjoin Defendants from participating in the VQS II arbitration if Ms. Burns is on the panel. Defendants moved to dismiss all these claims under Rule 12(b)(6), and petitioned the court to appoint an umpire and compel Plaintiff to return to arbitration. Plaintiff moved for a preliminary injunction enjoining Defendants from breaching the Confidentiality Agreement, appointing Ms. Burns as the VQS II arbitrator, and participating in the VQS II arbitration if Ms. Burns is on the arbitration panel.

## II. <u>LEGAL STANDARDS</u>

In order to survive a Rule 12(b)(6) motion to dismiss, a complaint must "include sufficient facts to state a claim for relief that is plausible on its face." *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir., 2009). The Court accepts as true all well-pleaded facts alleged in the complaint and draws all reasonable inferences in a light favorable to the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). While the Court "must take all the factual allegations in the complaint as true, [it is] not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that

the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 129 S. Ct. 365, 374 (2008).

### III. <u>DISCUSSION</u>

The current motions center around two topics: the arbitration clause in VQS II and the Confidentiality Agreement from the 1998 XOL Treaties arbitration. Plaintiff seeks to disqualify Defendants' arbitrator based on these two distinct grounds, while Defendants seek to continue arbitration with their arbitrator sitting on the panel.

#### A. Arbitration Clause

Plaintiff asks that Defendants' arbitrator be disqualified because she is not "disinterested" as required by the VQS II arbitration clause. The Federal Arbitration Act (the "FAA") specifies how courts should treat cases related to arbitration agreements. *See* 9 U.S.C. § 1 *et. seq.* Although specific powers are enumerated in relation to arbitration agreements, the power to remove an arbitrator on a bias challenge is not listed, while the power to vacate an arbitration due to arbitrator "misbehavior" is specifically listed. *See* 9 U.S.C. § 10.

"The time to challenge an arbitration, on whatever grounds, including bias, is when the arbitration is completed and an award

rendered." *Smith v. Am. Arbitration Ass'n*, 233 F.3d 502, 506 (7th Cir., 2000) (*citing Michaels v. Mariforum Shipping, S.A.*, 624 F.2d 411, 414 n.4 (2d Cir., 1980)). "[I]t is well established that a district court cannot entertain an attack upon the qualifications or partiality of arbitrators until after the conclusion of the arbitration and the rendition of an award." *Michaels*, 624 F.2d at 414 n.4.

The requirement that Defendants' arbitrator be "disinterested" is an issue of bias or qualification available for challenge only after an arbitration award issues. Plaintiff cannot avoid this outcome by merely restating the qualification challenge as a breach of contract claim. *See Smith*, 233 F.3d at 505-06; *Aviall, Inc. v. Ryder Sys.*, 110 F.3d 892, 896 (2d Cir., 1997). *Smith* considered an analogous situation where a plaintiff argued that an arbitration panel's composition breached the contract for arbitration, and demanded a new panel. *Id.* at 506. The Seventh Circuit expressed doubts about whether such a contract existed, but specifically noted that even "[s]o viewed, however, Smith's claim against Argenbright is premature" because the challenge could not be brought pre-award. *Id.*

Plaintiff relies heavily on *Jefferson-Pilot Life Ins. Co. v. LeafRe Reinsurance Co.*, No. 00 C 5257, 2000 U.S. Dist. LEXIS 22645

- 6 -

(N.D.Ill., Oct. 26, 2000) for the point that this challenge is timely because it is contractual. However, even *Jefferson-Pilot* clearly states "[t]here is little disagreement among courts that . . . allegations of an arbitrator's bias or impartiality cannot be litigated at the pre-award stage." *Id.* at *5. Plaintiff is challenging whether Defendants' arbitrator is "disinterested," which Black's Law Dictionary defines as "[f]ree from bias, prejudice, or partiality; not having a pecuniary interest." *Black's Law Dictionary* 481 (7th Ed. 1999). Even without precisely defining the term "disinterested" in the VQS II contract, it is clear Plaintiff is challenging on the ground of bias or partiality which is not permitted pre-award even under *Jefferson-Pilot*.

Plaintiff also suggests that *WellPoint* dictates a different result, but *WellPoint* deals with the specifically enumerated FAA power of courts to fill vacancies, not to challenge qualifications. *See WellPoint, Inc. v. John Hancock Life Ins. Co.*, 576 F.3d 643, 648 (7th Cir., 2009). In that case, Hancock failed to use the express FAA provision for resolving vacancy issues, and thereby forfeited its right to later challenge the appointment. *Id.* There is no similar FAA provision for pre-award arbitrator challenges. *See Crawford Group, Inc. v. Holekamp*, 543 F.3d 971, 976 (8th Cir., 2008).

Plaintiff has failed to state a claim upon which relief can be granted. Even if all their allegations are presumed true, their challenge to Defendants' arbitrator is premature, so Defendants' motion to dismiss is granted with respect to those claims arising out of the arbitration clause. Similarly, because Plaintiff's claims are premature, Plaintiff has failed to prove for its preliminary injunction that it is likely to succeed on the merits. Given this failure, the Court need not address the remaining factors for a preliminary injunction. Therefore, the preliminary injunction is denied with respect to disqualifying Defendants' arbitrator under the arbitration clause.

### B. Confidentiality Agreement

Plaintiff also claims that Defendants' arbitrator appointment constitutes a breach of the Confidentiality Agreement. Plaintiff argues that a breach is inevitable and asks for a preliminary injunction to prevent Defendants' arbitrator from serving on the VQS II panel. In determining if Plaintiff is likely to succeed on the merits of its contract claim, two theories of anticipatory breach were raised: repudiation and "inevitability."

Repudiation occurs when "a party makes a clear and unequivocal statement of his intention to break the contract when his performance comes due – a statement sufficiently positive to be

reasonably understood as meaning that the breach will actually occur." *C.L. Maddox, Inc. v. Coalfield Servs.*, 51 F.3d 76, 81 (7th Cir., 1995). Plaintiff has thoroughly described its concerns about the disclosure of confidential information, but nowhere has it pointed out a statement by Defendants or Defendants' arbitrator that they intend to breach the contract. Without any such statement, this theory of anticipatory breach is unsupported by facts.

Plaintiff also claims the breach is "inevitable." In a light most favorable to the Plaintiff, this would be a breach because the obligor performs "a voluntary affirmative act which renders the obligor unable or apparently unable to perform without such a breach." *Restatement (Second) of Contracts* § 250 (2009); *see Bowes v. Saks & Co.*, 397 F.2d 113, 118 (7th Cir., 1968). Plaintiff and Defendants seem to agree that the 1998 XOL Treaties arbitration decision will be an important part of the VQS II arbitration. Plaintiff claims that in these discussions, Defendants' arbitrator will inevitably disclose confidential information regarding the decision making process of the 1998 XOL Treaties arbitration panel. Therefore, by remaining the arbitrator in VQS II, Plaintiff alleges Defendants' arbitrator has undertaken a voluntary act which will place her in a position where she must breach the Confidentiality

Agreement. However, Plaintiff has failed to detail any mechanism or facts making this disclosure "inevitable," such that Defendants' arbitrator is *unable* to perform without breaching the Confidentiality Agreement.

Defendants' arbitrator is still able to articulate her viewpoints with reference only to the record in front of the VQS II arbitration panel, and without any reference to prior arbitrations. She does not need to disclose confidential information as part of her duties as a VQS II arbitrator. She won't be a fact witness not subject to cross-examination if she discloses no facts. Plaintiff has not disclosed that Defendants' arbitrator expressed any concern over her ability to keep the information confidential or has any conflicting fiduciary duty.

Plaintiff cites *Trustmark Ins. Co. v. John Hancock Life Ins. Co.*, No. 09 C 3959, 2010 U.S. Dist. LEXIS 4698 (N.D.Ill., Jan. 21, 2010) in support of its argument for disqualification under contract law. However, *Hancock* points out that there is a "strong presumption" that "arbitrators can disregard what they already know." *Id.* at *12. The critical difference between this case and *Hancock* is that in *Hancock*, the arbitrator in question had *already* breached a confidentiality agreement and in so doing had "rebutted the presumption that he could disregard knowledge he already had."

*Id.* In the present case, no breach has occurred and so the presumption is still in effect.

Plaintiff has clearly articulated a fear of disclosure, but even with all inferences in its favor, the Plaintiff has not pled any facts that show Defendants have breached, repudiated, or will necessarily breach the Confidentiality Agreement. The mere fear of a future breach in this case is not a cause of action. Stating the legal conclusion that Defendants' arbitrator will breach the Confidentiality Agreement without supporting facts is insufficient to defeat a motion to dismiss. *See Papasan*, 478 U.S. at 286. For these reasons, Defendants motion to dismiss is granted with respect to those claims arising out the Confidentiality Agreement. For the same reasons, Plaintiff has not proven that it is likely to succeed on the merits in its motion for a preliminary injunction. The motion for a preliminary injunction is denied with respect to its remaining claims related to the Confidentiality Agreement.

**C. Umpire Selection and Continued Arbitration**

Defendants have petitioned this Court to appoint an umpire and compel arbitration. The FAA provides authority for this Court to undertake this appointment if a party fails to name or appoint an umpire according to the method provided in an agreement. *See* 9 U.S.C. § 5. The FAA also provides the authority for this Court to

compel arbitration if a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" petitions for such an order. 9 U.S.C. § 4. In addition, the only remaining demand in Plaintiff's complaint is for the court to order Defendants to proceed with arbitration in accordance with the arbitration clause.

The arbitration clause describes the agreed upon method for selecting arbitrators and umpires. The parties agreed on a tripartite system of arbitration, with two party-arbitrators and one umpire. Each party appointed an arbitrator within thirty days of being requested to do so, as required by the agreement. The agreement next required these two arbitrators to agree on the umpire within thirty days of their appointment, which they failed to do as the parties turned their attention to the 1998 XOL Treaties arbitration. However, the agreement provided for this contingency by then requiring each arbitrator to name three individuals, with the opposing party eliminating two, "and the choice made by drawing lots." (Compl. Ex. 1 at 7.) The agreement set no deadline for submitting these three names. Defendants' sent three names to Plaintiff on September 4, 2009 and requested a response in thirty days. Plaintiff has not responded with its three choices.

While no specific deadline was set for this three name slate, a delay of over four months in a contract where all other arbitration deadlines are thirty days is a lapse in the naming of the umpire, a situation specifically provided for by the FAA. Defendants petitioned this court to appoint an umpire and the FAA provides that upon such petition "the court shall designate and appoint an . . . umpire." 9 U.S.C. § 5. The Court finds no reason to disqualify any of the three potential umpires named, so the Court appoints Mr. David Thirkill as the umpire for this arbitration, chosen by lot.

A motion to compel arbitration should be granted "if the parties have an arbitration agreement and the asserted claims are within its scope." *Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir., 2004). "[A] court may not deny a party's request to arbitrate an issue unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909 (7th Cir., 1999) (citations and quotations omitted). Plaintiff and Defendants have agreed on record that the arbitration clause was intended as a binding part of the VQS II contract. (Compl. § 8; Defs.' Pet. § 7.) The arbitration clause states that "any differences . . .

between the contracting parties" under VQS II would be submitted to arbitration upon the written request of either party. (Compl. Ex. 1 at 7.) There was an arbitration agreement under VQS II, and the present dispute is within the scope of this agreement. Given these facts, Defendants' petition is granted.

## IV. CONCLUSION

For the reasons stated herein, the Court rules as follows:

1. Defendants' Motion to Dismiss Plaintiff's Complaint is granted;

2. Defendants' Petition to Appoint an Umpire and Compel Arbitration is granted.

3. The Court appoints Mr. David Thirkill as umpire and the parties are compelled to return to arbitration; and

4. Plaintiff's Motion for a Preliminary Injunction is denied.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　／s／
　　　　　　　　　　　　　　　　　Harry D. Leinenweber, Judge
　　　　　　　　　　　　　　　　　United States District Court

**DATE:** 2/1/2010